Justice Souter,
dissenting.
If I thought this case should be classified solely as one about the First Amendment’s limits on a State’s management of its own affairs, I would join the judgment, and as it is I agree with much of the Court’s opinion. So far as Idaho’s *376 law affects freedom of expression, I am not persuaded there is sufficient reason to treat the State’s statutory prohibition differently depending on the unit of its government employing the worker whose salary deduction would fund political activity. There is no question in this case that the lower echelons of Idaho government are creatures of the State exercising state power in discharging what are ultimately state responsibilities. Nor is there any apparent reason to think the State’s asserted legitimate interest differs according to the level of government doing the State’s work, whether that interest is having a firewall between public administration and politics or simply exercising a power to decide whether public employees who administer payrolls should spend work time advancing private political speech.
But I find it impossible to stop there. Although this case comes to us as one about the scope of the public business the State is free, within reasonable limits, to manage as it thinks wise, the specter of another First Amendment category, one of superior significance, is too insistent to ignore. It is true that government may choose to manage its own affairs in ways that draw reasonable subject-matter lines affecting speech, being free, for example, to sell space on its buses for advertising soap but not politicians. See Lehman v. Shaker Heights, 418 U. S. 298 (1974). But a government is not free to draw those lines as a way to discourage or suppress the expression of viewpoints it disagrees with, Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U. S. 788, 806, 811-812 (1985); Perry Ed. Assn. v. Perry Local Educators’ Assn., 460 U. S. 37, 46, 49 (1983); only narrow tailoring to serve a compelling state interest could justify that kind of selectivity, see United States v. Playboy Entertainment Group, Inc., 529 U. S. 803, 813 (2000).
This difference between viewpoint discrimination and neutral regulation of governmental activity is on point in this case. For although the State invokes its legitimate interest in keeping public administration free from political involve *377 ment as its reason for Idaho Code § 44-2004(2) (Michie 2003), this ostensibly viewpoint-neutral rationale suffers from the circumstances Justice Stevens describes in detail, see ante, at 371-373 (dissenting opinion). Every other provision of the amendatory act in which §44-2004(2) was included deals with unions, the statute amended regulates unions, and all this legislation is placed in the State’s labor law codification. Ante, at 371. Union speech, and nothing else, seems to have been on the legislative mind.
The Court’s answer to this recalls Davenport v. Washington Ed. Assn., 551 U. S. 177 (2007), in suggesting that Idaho was merely limiting a self-created risk of entangling public administration with politics, which followed from authorizing public payroll deductions for union benefit in the first place, ante, at 360-361. But the scope of the state enactment that imposes the prohibition places that explanation in question, for the statute goes beyond constraining the government as employer, and criminalizes deductions for political purposes even when administered by private employers, an application of the law the State concedes is unconstitutional. Pocatello Ed. Assn. v. Heideman, 504 F. 3d 1053, 1057 (CA9 2007). Hence a reader of the statute may fairly suspect that Idaho’s legislative object was not efficient, clean government, but that unions’ political viewpoints were its target, selected out of all the politics the State might filter from its public workplaces.
What to do about this reasonable suspicion of viewpoint discrimination is a dilemma. We can hardly disregard it, for it affects the weight this case can carry as precedent; a decision that ignores the elephant in the room is a decision with diminished authority. But the potential issue of viewpoint discrimination that should be addressed in this case is not before us. Although the unions’ brief alludes to viewpoint discrimination in several places, that is not the focus of their argument. The unions, instead, aim at showing that the State is acting as a regulator of local governments (much as *378 it regulates private corporations), not as a manager setting limits to what government will do with public resources; consequently they rest their position on the argument that any state discrimination against political speech is illegitimate, however consistently all shades of political speech may be treated. And even if we could properly recast the case by remanding to consider viewpoint discrimination, see Cornelius, supra, at 811-812, a remand could only affect the application of the statute to subordinate units of government; the unions have accepted the constitutionality of applying the law to the State, where an effort at viewpoint discrimination would be as unconstitutional as it would be at the level of a town.
The upshot is that if we decide the case as it comes to us we will shut our eyes to a substantial, if not the substantial, issue raised by the facts. But if we were to expand the issues presented to us by remanding for enquiry into viewpoint discrimination, we would risk having to wink later at an unconstitutional application of the law to the State, owing to the unions’ decision not to challenge that application either in the Ninth Circuit or before us. This is a good description of a case that should not be in this Court as a vehicle to refine First Amendment doctrine.
I would dismiss the writ of certiorari as improvidently granted, and I respectfully dissent.